# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

| | |
|---|---|
| **LARRY STEPHENS**, an individual,<br><br>Plaintiff,<br><br>v.<br><br>**THE SCHOOL BOARD OF LEE COUNTY, FLORIDA**, a political subdivision of the State of Florida,<br><br>Defendant. | **CIVIL ACTION**<br><br>**Case No.  2:25-cv-709**<br><br>**Judge:**<br><br>**Mag. Judge:** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

**NOW COMES** the Plaintiff, **LARRY STEPHENS** ("**STEPHENS**" or "Plaintiff"), by and through undersigned counsel, and states the following for his Complaint:

## CAUSES OF ACTION

1.      This is an action brought under the Family & Medical Leave Act (FMLA), Rehab Act and Florida Public Sector Whistleblower Act (PWA) for (1) retaliation in violation of the FMLA, (2) retaliation in violation of the Rehab Act, and (3) retaliation in violation of the PWA.

1

## PARTIES

2.    The Plaintiff, **LARRY STEPHENS** ("**STEPHENS**") is an individual who at all material times resided in Lee County, Florida and who worked for the Defendant in Lee County, Florida.

3.    Defendant, **THE SCHOOL BOARD OF LEE COUNTY, FLORIDA** ("Defendant") is a political subdivision of the State of Florida. The Defendant was **STEPHENS'** employer. At all material times, the Defendant employed greater than fifty (50) employees.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction of this matter under 28 U.S.C. §1331 and has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

5.    Venue is proper in the United States District Court for the Middle District of Florida because the Plaintiff resides in Lee County, and Defendant conducts business in, and some or all of the events giving rise to Plaintiff's claims occurred in Lee County, Florida, which is within the Middle District of Florida. Venue is proper in the Fort Myers Division under Local Rule 1.04 since Lee County is within the Fort Myers Division.

## GENERAL ALLEGATIONS

6.    **STEPHENS** began his employment with Defendant on or about July 3, 2023, and was employed as the Defendant's Chief Operations Officer. The

Defendant is the ninth-largest district in Florida with more than 12,000 employees and receives millions of dollars annually in federal funding.

7.    **STEPHENS** always performed his assigned duties in a professional manner and was receiving glowing performance reviews and accolades.

### FMLA/Rehab Act Allegations

8.    Beginning in July 2023 and intensifying in October or November 2023, **STEPHENS** was subjected to a pattern of abuse by Dr. Bernier that caused serious health conditions.

9.    By March 2024, **STEPHENS**' health had deteriorated significantly, experiencing "frequent and intense headaches; isolations from family members; many sleepless nights; mood swings" and other symptoms.

10.    On April 30, 2024, **STEPHENS**' primary care physician, Lorraine Rizzo, APRN, completed a Certification of Health Care Provider for Employee's Serious Health Condition under the Family and Medical Leave Act. The certification documented:

- **Chronic Anxiety Disorder:** Diagnosed with "Chronic anxiety ICD-10: F41.9: Anxiety disorder, unspecified" with an approximate start date of August 2023 and duration listed as "Lifetime."

- **Qualifying Chronic Condition:** The physician checked the box for "Chronic Conditions" indicating that "Due to the condition, it is medically necessary for the patient to have treatment visits at least twice per year."

- **Intermittent Leave Requirement:** The certification established that "it will be medically necessary for the employee to be absent from work on an intermittent basis (periodically)" with episodes estimated to occur "1 times per month" and likely to last approximately "2 days per episode."

11.    On the same date, **STEPHENS** received a referral order to Elite DNA Therapy Services for "anxiety and post stress disorder" with treatment scheduled to begin April 30, 2024, and continue through October 2024, at a frequency of "1 per week."

12.    On April 30, 2024, **STEPHENS**' FMLA application and certification were received (in person) by Carol Powers, Generalist, Human Resources Staffing for the School District of Lee County.

13.    Despite receiving proper medical certification for intermittent FMLA leave on April 30, 2024, the Defendant failed to properly process or approve **STEPHENS**' FMLA request or provide him with the required FMLA notices and protections.

14.    Even after the Defendant had knowledge of **STEPHENS**' serious health conditions/disabilities and FMLA entitlement, the retaliatory pattern continued, culminating in his contract non-renewal in 2025.

15.    The Defendant's chief of HR had her contract non-renewed as well in April 2025, but she was allowed to go home and be compensated anyway, which

option was not given to **STEPHENS**, as he was required to continue working until his contract ended."

16.    The Defendant terminated **STEPHENS**' employment because he exercised his rights under the FMLA and Rehab Act.

**PWA Allegations**

17.    By late March 2024, **STEPHENS** had gathered extensive evidence that, since July 2023, then-Superintendent Bernier had been violating laws, rules and regulations, including but not limited to violations of Title VII of the Civil Rights Act of 1964, Florida Civil Rights Act, 42 U.S.C. §1981, Defendant's anti-bullying policies, and proper procurement procedures.

18.    On March 28, 2024, in a meeting with Dr. Bernier and Chief of Staff Michael Ramirez, **STEPHENS** was coerced into agreeing to submit a resignation letter with an employment end date of April 15, 2024. During this meeting, Bernier acknowledged his pattern of abusive behavior, stating "Larry, I'm an asshole, some people don't like me, but I am who I am."

19.    On April 1, 2024, **STEPHENS** submitted his resignation letter as coerced by Bernier. On the same date, an anonymous email was sent to **STEPHENS**, all seven School Board members, Kathy Dupuy-Bruno, and Dr. Bernier, providing corroborating evidence of violations including racial discrimination. According to the anonymous email sent on April 1, 2024, the author alleged that "At a local cigar bar he [Bernier] was with a vendor where he

5

disparaged you [Stephens] and wished he could get rid of you but because you were black he did not want to be called a racist or have any problems with the NAACP so he continued the campaign of degrading you behind your back and humiliating you during his cabinet meetings."

20.    On April 4, 2024, **STEPHENS** engaged in statutorily protected activity when he filed a signed, written whistleblower complaint through the School District of Lee County's Lighthouse hotline service regarding the disparate and abusive treatment he endured under Dr. Bernier's supervision. **STEPHENS** also rescinded his coerced resignation letter.

21.    **STEPHENS'** April 4th complaint was detailed and included:

- **Violations of Anti-Discrimination and Anti-Bullying Laws:** Stephens' complaint detailed how Bernier subjected him to "bullying, racial profiling, and other unprofessional behavior," treating him "less favorably than white employees" and exhibiting "facial bias against him."

- **Malfeasance and Abuse of Official Authority:** The complaint documented Bernier's pattern of "dehumanizing, insulting loud and disrespectful" treatment of employees, using profanity and creating a hostile work environment in violation of his official duties as Superintendent.

- **Gross Waste of Public Funds:** Stephens disclosed Bernier's attempt to force the district into purchasing an unnecessary Audio Enhancement system costing $378,279.66 when a superior Lightspeed system was available for $325,865.00, representing potential waste of over $50,000 in public funds.

- **Gross Neglect of Duty and Misfeasance:** Stephens reported Bernier's failure to follow proper state procurement procedures for the P3 project, requiring the entire process to

be restarted due to non-compliance with state statutes, causing delays and additional costs to the district.

22.    **STEPHENS**' signed, written Lighthouse complaint was delivered to and processed by the School District of Lee County's official whistleblower reporting system.

23.    Bernier resigned after he received notice of **STEPHENS**' April 4th Lighthouse complaint, and an interim Superintendent took over. **STEPHENS** annual contract was renewed for the 2024-2025 school year.

24.    **STEPHENS**' April 4th complaint was subsequently investigated by Tampa lawyer Cherie Silberman, who interviewed **STEPHENS** on April 10th as part of a comprehensive investigation involving 22 people. During that interview, **STEPHENS** provided testimony and evidence regarding Bernier's violations of law and policy described above.

25.    Ms. Silberman issued her investigative report on or about July 30, 2024, which substantiated many the allegations **STEPHENS** had made in his April 4th complaint.

26.    On November 19, 2024, Denise Carlin was sworn in as the new elected superintendent on November 19, 2024. This marked the first time in 50 years that Lee County had an elected superintendent.

27.    The new superintendent was aware of **STEPHENS**' April 4th complaint and swore that if she was elected his contract would not be renewed.

The new superintendent followed through on that threat and his contract was indeed not renewed, with his last day of employment being June 30, 2025.

28.    The new superintendent has not directly hired anyone of a minority group for higher leadership, and all minority members that worked with **STEPHENS** have gotten their contracts non-renewed or have been demoted.

29.    At the time **STEPHENS** made his signed, written complaint on April 4, 2024 and at the time he was interviewed by Ms. Silberman, **STEPHENS** was an employee in good standing and had not been subject to any adverse personnel action.

30.    The Defendant also nonrenewed the chief of human resources (Caucasian female), but she was allowed to go home and be compensated anyway, which option was not given to **STEPHENS**, he was forced to keep working until his contract ended.

31.    The Defendant's decision to terminate **STEPHENS**' employment violated the PWA.

## COUNT I – VIOLATION OF THE FAMILY MEDICAL LEAVE ACT ("FMLA")- INTERFERENCE

32.    The Plaintiff hereby incorporates by reference Paragraphs 1-16 in this Count by reference as though fully set forth below.

33.    **STEPHENS** qualified for FMLA leave under 29 U.S.C. § 2611(11); 29 CFR §§ 825.113(a); 825.800 since he began suffering from a serious health

condition, **STEPHENS** had worked for more than 1,250 hours in the previous 12 months, the FMLA defining a serious health condition as an illness, injury, impairment, or physical or mental condition that involves treatment by a health care provider.

34.    **STEPHENS** informed the Defendant of his need for medical leave for his serious health condition.

35.    The Defendant was responsible for designating leave as FMLA-qualifying and for giving notice of the designation within five business days, absent extenuating circumstances, after it has enough information to make that determination, such as when it receives medical certification.

36.    If the Defendant were to have decided that **STEPHENS'** absence was not FMLA-qualifying, it must have notified him of this fact in the Designation Notice under 29 CFR § 825.300(d)(1).

37.    In fact, the Defendant should have determined that **STEPHENS** was eligible for leave under the FMLA but terminated his employment because of his request for federally protected medical leave.

38.    **STEPHENS** engaged in activity protected by the FMLA when he requested leave due to his serious health conditions, consistently informing the Defendant of the same.

39.    The Defendant knew, or should have known, that **STEPHENS** was exercising his rights under the FMLA and was aware of **STEPHENS'** need for FMLA-protected absence.

40.    **STEPHENS** complied with all of the notice and due diligence requirements of the FMLA.

41.    The Defendant was obligated, but failed, to allow **STEPHENS** to take FMLA leave and to return **STEPHENS**, an employee who requested FMLA leave, to his former position or an equivalent position with the same pay, benefits, and working conditions when he tried to return to work under 29 U.S.C. § 2614(a)(1); 29 CFR § 825.215(a).

42.    A causal connection exists between **STEPHENS'** request for FMLA-protected leave and his termination from employment with the Defendant because the Defendant denied **STEPHENS** a benefit to which he was entitled under the FMLA.

43.    As a result of the above-described violations of FMLA, **STEPHENS** has been damaged by the Defendant in the nature of lost wages, salary, employment benefits and other compensation and is therefore entitled to recover actual monetary losses, interest at the prevailing rate and liquidated damages.

WHEREFORE, Plaintiff requests trial by jury of all issues so triable as of right, an award of damages for lost wages and benefits, prejudgment interest, and liquidated damages under 29 U.S.C. § 2617(a)(1)(A), reinstatement or such other

legal or equitable relief as may be appropriate, and an award of reasonable attorney's fees and costs as authorized under 29 U.S.C. § 2617(3), and any other such damages as this honorable Court deems just.

## <u>COUNT II – VIOLATION OF THE FAMILY & MEDICAL LEAVE ACT ("FMLA")- RETALIATION</u>

44.     The Plaintiff hereby incorporates by reference Paragraphs 1-16 in this Count by reference as though fully set forth below.

45.     **STEPHENS** qualified for FMLA leave under 29 U.S.C. § 2611(11); 29 CFR §§ 825.113(a); 825.800 since he began suffering from a serious health condition, **STEPHENS** had worked for more than 1,250 hours in the previous 12 months, the FMLA defining a serious health condition as an illness, injury, impairment, or physical or mental condition that involves treatment by a health care provider.

46.     **STEPHENS** informed the Defendant of his need for medical leave for his serious health condition.

47.     The Defendant was responsible for designating leave as FMLA-qualifying and for giving notice of the designation within five business days, absent extenuating circumstances, after it has enough information to make that determination, such as when it receives medical certification.

48.     If the Defendant were to have decided that **STEPHENS**' absence was not FMLA-qualifying, it must have notified him of this fact in the Designation Notice under 29 CFR § 825.300(d)(1).

49.     In fact, the Defendant should have determined that **STEPHENS** was eligible for leave under the FMLA and terminated his employment because of his request for federally protected medical leave.

50.     **STEPHENS** engaged in activity protected by the FMLA when he requested leave due to his serious health conditions, consistently informing the Defendant of the same.

51.     The Defendant knew, or should have known, that **STEPHENS** was exercising his rights under the FMLA and was aware of **STEPHENS**' need for FMLA-protected absence.

52.     **STEPHENS** complied with all of the notice and due diligence requirements of the FMLA.

53.     A causal connection exists between **STEPHENS**' request for FMLA-protected leave and his termination from employment with the Defendant.

54.     The Defendant retaliated by altering the terms and conditions of **STEPHENS**'s employment by terminating **STEPHENS**' employment because he engaged in the statutorily protected activity of requesting and taking FMLA leave.

55.     As a result of the above-described violations of FMLA, **STEPHENS** has been damaged by the Defendant in the nature of lost wages, salary,

employment benefits and other compensation and is therefore entitled to recover actual monetary losses, interest at the prevailing rate and liquidated damages.

WHEREFORE, Plaintiff requests trial by jury of all issues so triable as of right, an award of damages for lost wages and benefits, prejudgment interest, and liquidated damages under 29 U.S.C. § 2617(a)(1)(A), reinstatement or such other legal or equitable relief as may be appropriate, and an award of reasonable attorney's fees and costs as authorized under 29 U.S.C. § 2617(3), and any other such damages as this honorable Court deems just.

## COUNT III – VIOLATION OF THE REHAB ACT, AS AMENDED

56.     Plaintiff incorporates by reference Paragraphs 1-16 of this Complaint as though fully set forth below.

57.     At all relevant times, the Plaintiff was an individual with a disability within the meaning of the Rehab Act.

58.     Specifically, the Plaintiff has mental impairments that substantially limit one or more of his major life activities and bodily functions, has a record of the impairment, and is regarded by the Defendant as having such impairments.

59.     The Plaintiff is a qualified individual with disabilities as that term is defined in the Rehab Act.

60.     The Plaintiff is an individual who, with reasonable accommodation, at all relevant times could perform the essential functions of his job with the Defendant.

13

61.    At all material times, the Plaintiff was an employee, and the Defendant was his employer covered by and within the meaning of the Rehab Act.

62.    The Defendant was made aware and was aware of the Plaintiff's disabilities, which qualify under the Rehab Act.

63.    The Defendant discriminated against the Plaintiff with respect to his terms, conditions, and privileges of employment solely because of his disabilities by terminating his employment.

64.    The Defendant conducted itself with malice or with reckless indifference to the Plaintiff's federally protected rights.

65.    The Defendant has discriminated against the Plaintiff in violation of the Rehab Act by interfering with his enjoyment of all benefits, privileges, terms, and conditions of his employment.

66.    The conduct of the Defendant altered the terms and conditions of the Plaintiff's employment and the Plaintiff suffered negative employment action.

67.    As a direct and proximate result of the violations of the Rehab Act, as referenced and cited herein, the Plaintiff has lost all of the benefits and privileges of his employment and has been substantially and significantly injured in his career path that was anticipated from his employment.

68.    As a direct and proximate result of the violations of the Rehab Act as referenced and cited herein, and as a direct and proximate result of the prohibited

acts perpetrated against him, the Plaintiff is entitled to all relief necessary to make him whole.

69.    As a direct and proximate result of the Defendant's actions, the Plaintiff has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

i.     Back pay and all other benefits, perquisites and other compensation for employment which plaintiff would have received had he maintained his position with Defendant, plus interest, including but not limited to lost salary and bonuses;

ii.    Front pay, including benefits, insurance costs, benefits costs, and retirement benefits;

iii.   Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

iv.    Reasonable attorney's fees plus costs;

v.     Compensatory damages, and;

vi.    Such other relief as this Court shall deem appropriate.

## **COUNT IV – VIOLATION OF THE REHAB ACT- RETALIATION**

70.    Plaintiff incorporates by reference Paragraphs 1-16 of this Complaint as though fully set forth below.

71.    Following **STEPHENS** engaging in protected activity, Defendant retaliated by altering the terms and conditions of his employment by terminating **STEPHENS**.

72.    Said protected activity was the proximate cause of Defendant's negative employment actions against **STEPHENS** including changed working conditions, discipline, and ultimately termination.

73.    The acts, failures to act, practices and policies of Defendant set forth above constitute retaliation in violation of the Rehab Act.

74.    As a direct and proximate result, as referenced and cited herein, **STEPHENS** has lost all of the benefits and privileges of his employment and has been substantially and significantly injured in his career path.

75.    As a direct and proximate result of the prohibited acts perpetrated against him, **STEPHENS** is entitled to all relief necessary to make him whole as provided for under the Rehab Act.

76.    As a direct and proximate result of Defendant's actions, **STEPHENS** has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits,

humiliation, and non-economic damages for physical injuries, mental and emotional distress.

77.    **STEPHENS** has exhausted any appropriate administrative remedies and this count is timely brought.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

i.      Back pay and all other benefits, perquisites and other compensation for employment which plaintiff would have received had he maintained his position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

ii.     Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iii.    Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of the Defendant's actions;

iv.    Reasonable attorney's fees plus costs;

v.     Compensatory damages, and;

vi.    Such other relief as this Court shall deem appropriate.

## COUNT V – VIOLATION OF FLORIDA'S PUBLIC WHISTLEBLOWER ACT (PWA)

78.    Plaintiff incorporates by reference Paragraphs 1-7 and 17-31 of this Complaint as though fully set forth below.

79.    This Count is timely brought under F.S. §112.3187(8)(c) as **STEPHENS** has exhausted all available administrative remedies.

80.    At all material times, **STEPHENS** was an employee, and the Defendant was his employer covered by and within the meaning of the PWA.

81.    **STEPHENS** was qualified for the position that he held with the Defendant.

82.    **STEPHENS** did engage in statutorily protected activity.

83.    **STEPHENS** did make several disclosures of the Defendant's violations of federal, state, and/or local laws, rules, and/or regulations committed which created and presented a substantial and specific danger to the public's health, safety, or welfare.

84.    **STEPHENS** did make several disclosures of the Defendant's gross mismanagement, malfeasance, misfeasance, nonfeasance, and/or neglect of duty.

85.    **STEPHENS** did suffer adverse employment action, which is causally linked to his engagement in statutorily protected activity.

86.    **STEPHENS** made his written disclosures on his own initiative to appropriate local officials.

87.    **STEPHENS**'s complaints and disclosures constitute a protected activity because his complaints and disclosures were concerning an unlawful activity of the Defendant.

88.     Said protected activity was the proximate cause of the Defendant's negative employment actions against **STEPHENS**, which included **STEPHENS**' termination.

89.     The Defendant retaliated against **STEPHENS** by terminating his employment.

90.     The acts, failures to act, practices and policies of the Defendant set forth above constitute retaliation in violation of the PWA.

91.     As a direct and proximate result of the violations of the PWA, as referenced and cited herein, **STEPHENS** has lost all of the benefits and privileges of his employment and has been substantially and significantly injured in his career path.

92.     As a direct and proximate result of the violations of the PWA, as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against him, **STEPHENS** is entitled to all relief necessary to make him whole as provided for under the PWA.

93.     As a direct and proximate result of the Defendant's actions, **STEPHENS** has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

i.   Back pay and all other benefits, perquisites and other compensation for employment which Plaintiff would have received had he maintained his position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

ii.  Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iii. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

iv.  Reasonable attorney's fees plus costs;

v.   Temporary reinstatement;

vi.  Compensatory damages, and;

vii. Such other relief as this Court shall deem appropriate.

## DEMAND FOR JURY TRIAL

**NOW COMES** the Plaintiff, **LARRY STEPHENS**, by and through undersigned counsel, and demands a jury trial under Federal Rule of Civil Procedure 38 on all issues triable of right by a jury in this action.

Respectfully submitted,

Dated: August 11, 2025          **/s/ Benjamin H. Yormak**
                                 Benjamin H. Yormak

Florida Bar Number 71272
Lead Counsel for Plaintiff
YORMAK EMPLOYMENT & DISABILITY LAW
27200 Riverview Center Blvd., Suite 109
Bonita Springs, Florida 34134
Telephone: (239) 985-9691
Fax: (239) 288-2534
Email: byormak@yormaklaw.com