UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LARRY STEPHENS, an
individual,

      Plaintiff,

v.                        Case No:  2:25-cv-709-JES-DNF

THE SCHOOL BOARD OF LEE
COUNTY, FLORIDA, a
political subdivision of
the State of Florida,

      Defendant.

_____

**<u>OPINION AND ORDER</u>**

This matter comes before the Court on review of the Motion for Temporary Reinstatement (Doc. #25) filed on December 19, 2025 by Plaintiff Larry Stephens ("Stephens").  Defendant School Board of Lee County, Florida ("School Board") filed a Response in Opposition on January 26, 2026. (Doc. #28.)  With leave of the Court, Stephens and the School Board filed Replies on January 28, 2026 and February 9, 2026, respectively. (Docs. ##31, 34.)   For the reasons set forth below, Plaintiff's motion is granted in part and denied in part.

**I.**

Stephens began his employment as a Chief Operations Officer with the School District of Lee County ("the School District") on

July 3, 2023.  (Doc. #1 at ¶ 6.)  As Chief Operations Officer his responsibilities included "overseeing facilities, transportation, procurement, construction projects, and other operational functions critical to the [District's] mission of educating students." (Doc. #25-1 at ¶ 4.)  Until April 9, 2024, Stephens's supervisor was Dr. Christopher Bernier ("Dr. Bernier"), the superintendent of the District.  (Doc. #1 at ¶ 8.)

According to the Complaint, beginning in October or November of 2023, Dr. Bernier subjected Stephens to "a pattern of abuse." (Id. at ¶ 8.)  On April 4, 2024, Stephens engaged in statutorily protected activity by submitting a signed, written whistleblower complaint to the District's Lighthouse hotline service.  (Id. at ¶ 20.)  In the Lighthouse complaint Stephens detailed, inter alia, Dr. Bernier's racial discrimination, harassment, and mismanagement of public funds. (Id. at ¶ 21.)  Dr. Bernier resigned as superintendent shortly thereafter, and Stephens' annual contract was renewed for the 2024-25 school year despite Dr. Bernier's prior statement that he intended not to renew it.  (Id. at ¶ 23.) Stephens' complaint was investigated by an outside law firm, which substantiated many of his allegations.  (Id. at ¶¶ 24-25.)

In November 2024, Dr. Denise Carlin ("Dr. Carlin") was sworn in as the newly elected superintendent of the School District. (Id. at ¶ 26.)  Dr. Carlin was aware of Stephens' official

whistleblower complaint and had stated her intentions not to renew his contract if she was elected.  Dr. Carlin did not renew Stephens's contract, whose last day of employment was June 30, 2025.  (Id. at ¶¶ 26-27.)

On August 11, 2025, Stephens filed a Complaint (Doc. #1) in federal court against the School Board for (1) retaliation in violation of the Family & Medical Leave Act ("FMLA"), (2) retaliation in violation of the Rehabilitation Act, and (3) retaliation in violation of the Florida Public Sector Whistleblower Act ("FWA") (Id. at ¶¶ 78-93).  In the instant Motion for Temporary Reinstatement, Stephens requests that the Court temporarily reinstate his employment with the School District pursuant to Fla. Stat. § 112.3187(9)(f) of the FWA.  (Doc. #25.)

**II.**

The relevant portion of the FWA prohibits public employers from taking retaliatory action against an employee "who discloses information to an appropriate agency alleging improper use of governmental office, gross waste of funds, or any other abuse or gross neglect of duty on the part of an agency, public officer, or employee." Fla. Stat. § 112.3187(2).  The FWA is remedial and should be given liberal construction in favor of granting access to its remedies.  Irven v. Dep't of Health & Rehab. Services, 790 So. 2d 403, 405 (Fla. 2001).

-3-

The FWA provides that relief for a violation "must include" certain action. Fla. Stat. § 112.3187(9)(a)-(f). Under § 112.3187(9)(f) the relief "must include"

> [t]emporary reinstatement to the employee's former position or to an equivalent position, pending the final outcome on the complaint, if an employee complains of being discharged in retaliation for a protected disclosure and if a court of competent jurisdiction or the Florida Commission on Human Relations, as applicable under s. 112.31895, determines that the disclosure was not made in bad faith or for a wrongful purpose or occurred after an agency's initiation of a personnel action against the employee which includes documentation of the employee's violation of a disciplinary standard or performance deficiency.

§ 112.3187(9)(f), Fla. Stat.

Thus, to obtain a temporary reinstatement the employee must show that "'1) prior to termination the employee made a disclosure protected by the statute; 2) the employee was discharged; and 3) the disclosure was not made in bad faith or for a wrongful purpose, and did not occur after an agency's personnel action against the employee.'" Dep't of Children & Families v. Herstein, 399 So. 3d 384, 389 (Fla. 1st DCA 2025) (quoting State, Dept. of Transp. v. Florida Com'n on Human Relations, 842 So. 2d 253, 255 (Fla. 1st DCA 2003)). The personnel action in the third element requires that "an agency's initiation of a personnel action against the employee" "includes documentation of the employee's violation of

-4-

a disciplinary standard or performance deficiency." Fla. Stat. § 112.3187(9)(f).

### III.

Stephens asserts that the FWA protects both his April 24, 2025, complaint and his participation in the investigation of that complaint. (Doc. #25 at pp. 5-12.) For purposes of the motion, the School Board does not contest that Stephens made protected disclosures under the FWA. (<u>See</u> Doc. #28.)

Stephens also asserts that he was discharged within the meaning of the FWA when his contract was not renewed for the 2025-2026 school year. (Doc. #25 at pp. 13-14.) The School Board does not contest that Stephens was discharged when he was informed on April 21, 2025, that his contract would not be renewed for the 2025-2026 school year.

The School Board contends, however, that Stephens is statutorily disqualified from temporary reinstatement because: (1) his April 4, 2024, whistleblower disclosure "was made in bad faith or for a wrongful purpose;" and (2) "his disclosure occurred after the District had initiated personnel action against him and there is documentation of performance deficiency." (Doc. #28 at pp. 1, 12-13.)

**A. Bad Faith or Wrongful Purpose of Disclosure**

The School Board initially focuses on the wrong conduct, asserting that "Plaintiff's Motion should fail as it was made in bad faith and/or for a wrongful purpose." (Doc. #28 at p. 13.) As discussed earlier, the FWA provides for temporary reinstatement "if an employee complains of being discharged in retaliation for a protected disclosure and if a court of competent jurisdiction . . . determines that the disclosure was not made in bad faith or for a wrongful purpose."  § 112.3187(9)(f), Fla. Stat. (emphasis added.)  It is not the motion which must not be made in bad faith or for a wrongful purpose, but Plaintiff's protected disclosure.

Stephens agrees that a temporary reinstatement is only available if the disclosures were not made in bad faith or for a wrongful purpose, but asserts that his actions were taken in good faith and for a proper purpose.  (Doc. #25 at pp. 14-15.)  The FWA does not define the term "bad faith", but Florida law has defined "bad faith" in related contexts.  For example, Fla. Stat. § 768.28 precludes liability in tort for a state government employee unless the employee "acted in bad faith or with malicious purpose . . .." Fla. Stat. § 768.28(9)(a).  The phrase 'bad faith,' as used in section 768.28(9)(a), has been "equated with the actual malice standard." Parker v. State of Fla. Bd. of Regents ex rel. Fla. State Univ., 724 So. 2d 163, 167 (Fla. 1st DCA 1998) (citation omitted).  See also  Aguirre v. Seminole Cnty., 158 F.4th 1276,

1311 (11th Cir. 2025) (noting that Florida courts equate bad faith with the actual malice standard.); Barr v. Denmark, No. 24-12075, 2024 WL 4969270, at *3 (11th Cir. Dec. 4, 2024)(same). Another Florida court defines "bad faith" as "[t]he opposite of 'good faith', generally implying or involving active or constructive fraud, or a design to mislead or deceive another . . . or sinister motive . . . [contemplating] a state of mind affirmatively operating with a furtive design or some motive of interest or ill will." Bosso v. Neuner, 426 So. 2d 1209, 1212 (Fla. 4th DCA 1983)(quoting Black's Law Dictionary, 4th Ed. at p. 176.)

According to the School Board, Stephens' allegations and admissions demonstrate his bad faith and wrongful purpose because: (1) Stephens' first protected disclosure was untimely; (2) Stephens had a "furtive design," as demonstrated by his failure to attach his Timeline document to the motion, his Declaration, or the Complaint; and (3) Stephens made "several misrepresentations" as established by inconsistencies between his Declaration and his Timeline. (Doc. #28 at pp. 1, 13-16.) The Court is not convinced.

### (1)  Delay in Making Protected Disclosure

The School Board first argues that Stephens did not file a protected disclosure until nine days after he was informed on March 26, 2024, that Dr. Bernier intended to terminate his employment. The School Board argues that the nine-day delay establishes

Stephens' bad faith and improper purpose.  (Doc. #28, pp. 3, 14.) A nine-day delay is clearly insufficient to infer bad faith or wrongful purpose. King v. State of Florida, 650 F. Supp. 2d 1157, 1164 (N.D. Fla. 2009)(rejecting argument that approximate three month delay was evidence of bad faith "because there are many explanations as to why an employee might wait to file official complaints against his employer.")  While an undue delay in filing a protected disclosure may establish bad faith or wrongful purpose, the nine days here does not come close to establishing either.

The School Board also argues that "Plaintiff had been informed by Dr. Bernier of many performance deficiencies over at least the eight (8) months prior to his whistleblower complaint/disclosure." (Doc. #28 at p. 3 n.4.)  The School Board asserts Stephens "waited for months to submit his whistleblower complaint/disclosure – doing so only after being informed of his impending termination." (Id. at 15.)  This delay, the School Board argues, "does not satisfy the good faith (and/or wrongful purpose) standard" under the statute.  (Id.)

The School Board does not indicate what a reasonable period of time would have been in this case, and does not argue that Stephens missed any applicable statute of limitations.  Nothing about Stephens taking what he perceived as abusive conduct by Dr. Bernier for eight months allows a reasonable inference of bad faith

or wrongful purpose.  Accordingly, the Court is not convinced that the delays identified by the School Board evince that Stephens acted in bad faith or for an improper purpose.

### (2)  "Furtive Design": Failure to Attach Timeline

The School Board asserts that Stephens had a "furtive design," as demonstrated by his failure to attach his Timeline document to the motion, his Declaration, or the federal Complaint and by his several misrepresentations.  (Doc. #28 at pp. 15-17.)  The School Board does not expound on the parameters of its perceived "furtive design."

It is difficult to see how the evidentiary Timeline document could have properly been attached to a Complaint filed in federal court.  While the Timeline could certainly have been attached to the Declaration or the motion, the failure to do so does not suggest to the Court any "furtive design" which would be supportive of either bad faith or wrongful purpose.  The alleged misrepresentations are addressed below.

### (3)  Misrepresentations By Stephens

The School Board asserts that Stephens made "several misrepresentations," as established by inconsistencies between his Declaration and his Timeline, which support findings of bad faith and wrongful purpose.  The falsities, as the School Board sees it, were that Stephens said he consistently had good reviews from

others, but the Timeline indicated Dr. Bernier made specific (and frequent) criticism of his performance.  (Doc. #28 at pp. 16-17.)

Stephens argues that his disclosures "contain no material omissions or falsehood, were both objectively and subjectively reasonable, and were vindicated by thorough investigation," and that his participation in the subsequent investigation confirms his good faith.  (Doc. #25 at p. 15.)  He argues that each of his significant allegations was "substantiated by the independent investigation, corroborated by multiple witnesses, or supported by documentary evidence."  (Id. at pp. 15-16.)  Additionally, Stephens argues that the specificity of his disclosures is a "hallmark of good faith."  (Id. at p. 19.)

Even if there are inconsistencies which may be characterized as misrepresentations, the Court finds nothing which would disqualify Stephens or establish bad faith or wrongful purpose. The School Board's reliance on Vickaryous v. Mason Classical Acad., Inc., No. 2:21-CV-903-JLB-NPM, 2022 WL 4463560 (M.D. Fla. Sept. 26, 2022) (Vickaryous II) is unpersuasive due to the significant factual differences in Vickaryous II.  The Court finds that Stephens has sufficiently shown that the disclosures were not made in bad faith or for a wrongful purpose.

**B. Personnel Action and Its Documentation**

To qualify for temporary reinstatement under the FWA, a plaintiff must establish that his whistleblower disclosure did not occur "after an agency's initiation of a personnel action against the employee which includes documentation of the employee's violation of a disciplinary standard or performance deficiency." Fla. Stat. § 112.3187(9)(f).  Stephens argues that this means written documentation must exist, but none does.  (Doc. #25 at pp. 13-14.)

The School Board contends that Stephens fails to establish this requirement because his protected disclosure occurred after his deficiencies were documented – by Stephens himself in his Timeline document.  (Doc. #28 at pp. 19-20.)  The School Board does not point to any documentation created by it or its agents or employees (other than Stephens).  Although the Timeline was authored by Stephens, the School Board argues that § 112.3187(9)(f)'s plain language does not mandate that such documentation be drafted by the employer, only that *some* form of documentation exists to substantiate the performance issues.  The School Board views the timeline drafted by the aggrieved employee as sufficient to meet the statutory threshold. (Id.)

The Court must interpret statutory language in light of its overall structure and the logical relationship between its parts. See Ham v. Portfolio Recovery Associates, LLC, 308 So. 3d 942, 946

(Fla. 2020) (noting that Florida Courts "follow the 'supremacy-of-text principle'—namely, the principle that '[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means.'"); Justice v. Guerrero-Justice, 403 So. 3d 375, 378 (Fla. 3d DCA 2025) (same).  But the School Board's reading of the statute asks the Court to ignore the provision's context and text.

Section 112.3187(9)(f)'s plain language refutes the School Board's interpretation because the provision requires "an *agency's* initiation of personnel action against the employee which includes documentation of the employee's violation of a disciplinary standard or performance deficiency."  Fla. Stat. § 112.3187(9)(f).  Because the statute refers to the "agency's initiation," the entire process — including the documentation — must be an act of the agency.

The Court concludes that the timeline of events authored by Stephens to support his claims of misconduct by Dr. Bernier is insufficient to constitute written documentation pursuant to Section 112.3187(9)(f).  Without agency documented performance deficiencies, the facts on this record do not support the School Board's assertion that Stephens's disclosures were made following a personnel action "which includes documentation of the employee's violation of a disciplinary standard or performance deficiency."

The School Board identifies no agency documentation, other than its assertion that Stephens' own diary-like notations qualify under the statute. Thus, Stephens has met his burden of showing facts which support his claim for temporary reinstatement under the FWA.

In its Reply (Doc. #34), the School Board asserts that the personnel action occurred when Dr. Bernier told Stephens that he intended to terminate Stephens' employment with the School Board. (Id. at p. 6.) The Court doubts that this statement of intent constitutes a personnel action for purpose of the statute. After all, a teacher with an annual contract may be dismissed during the term of the contract only for just cause. See § 1012.335(4), (5), Fla. Stat. Although the matter was initially placed on the School Board's calendar, neither Dr. Bernier nor the School Board followed through with the intended termination. In any event, the School Board has not provided the Court with any adequate agency-authored written documentation from that meeting to support the purported personnel action.

### C.  Timing of Temporary Reinstatement

Stephens asserts that his temporary reinstatement should be made retroactive until June 30, 2025, the date of his last employment with the School Board, or December 19, 2025, the date the Motion was filed. The Court finds no basis to do either.

-13-

Temporary reinstatement shall be effective as of the date of this Opinion and Order.

Accordingly, it is now

**ORDERED:**

Plaintiff's Motion for Temporary Reinstatement (Doc. #25) is **GRANTED in part and DENIED in part.** The School Board shall temporarily reinstate Larry Stephens as Chief Operations Officer or to an equivalent position, effective as of the date of this Opinion and Order, pending the final outcome of the complaint.

**DONE AND ORDERED** at Fort Myers, Florida, this __20th__ day of May 2026.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record

-14-