UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LARRY STEPHENS, an individual,

Plaintiff,

v. Case No: 2:25-cv-709-KCD-KRH

THE SCHOOL BOARD OF LEE COUNTY, FLORIDA, a political subdivision of the State of Florida,

Defendant.

---

**ORDER**

Several months ago, this Court ordered Defendant School Board of Lee County, Florida to temporarily reinstate Plaintiff Larry Stephens ("Stephens") under Florida Statute § 112.3187(9)(f) "as Chief Operations Officer or to an equivalent position" pending the outcome of his complaint. (Doc. 36 at 14.) Unhappy with that result, the School Board appealed. (Doc. 40.) Now, it asks this Court to pause Stephens' reinstatement while that appellate process plays out. (Doc. 44.)

As the School Board sees it, a stay is justified because this Court got the law wrong. The Board argues it is likely to succeed on appeal because the Court

"misconstrued" its arguments and misapplied Florida's whistleblower statute. (Doc. 40 at 11.) For good measure, the Board adds that the balance of hardships and the public interest strongly favor a stay, pointing to a looming budget deficit and its paramount obligation to fund student education rather than executive salaries. (Doc. 40 at 20-24.)

The Court is not convinced. A stay pending appeal "is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 427 (2009). It is instead an "exercise of judicial discretion," requiring the moving party to carry a heavy burden. *Id.* Because the School Board has failed to make the strong showing necessary to halt the ordinary operation of this Court's prior order, the motion is **DENIED**.

## I. Background

The dispute here traces back to July 2023, when Stephens became the Chief Operations Officer for the School District of Lee County. A few months into the job, things went south. According to the complaint, the District's former superintendent, Dr. Christopher Bernier, subjected Stephens—who is African American—to a pattern of racial discrimination and repeated verbal abuse. (Doc. 1 at ¶ 21.) Things came to a head on March 26, 2024, when Bernier told Stephens his contract would not be renewed because of alleged "performance deficiencies." (*Id.* ¶¶ 24-25.)

On April 4, 2024, Stephens submitted a formal whistleblower complaint through the District's reporting system and followed up with a letter to School Board members. (*Id.* ¶¶ 55-56.) The District brought in an outside law firm to investigate. That investigation substantiated many, but not all, of Stephens's allegations, and Bernier resigned shortly after the complaint was filed. (*Id.* ¶¶ 77, 87.)

Following a change in leadership, Dr. Denise Carlin was sworn in as the new superintendent in November 2024. Under her administration, Stephens was informed that his contract would not be renewed for the 2025-2026 school year, ending his employment on June 30, 2025. (*Id.* ¶ 100.)

Throughout his tenure, Stephens kept "contemporaneous documentation" of Bernier's conduct. (*Id.* ¶ 108.) Based on those records, he filed this lawsuit. He claims, among other things, retaliation in violation of the Florida Public Sector Whistleblower Act ("FWA"). (Doc. 1.) When this Court granted Stephens' statutory request for temporary reinstatement under the FWA, the School Board appealed.

## II. Legal Standard

"A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken*, 556 U.S. at 433.[1] Instead, the issuance of a stay is "an exercise of judicial discretion," and "[t]he propriety of its issue is dependent upon the circumstances of the particular case." *Id.*; *see also Hilton v. Braunskill*, 481 U.S. 770, 777 (1987) ("[T]he traditional stay factors contemplate individualized judgments in each case."). The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion. *Nken*, 556 U.S. at 434.

When considering whether to issue a stay, courts consider the following four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.*

## III. Discussion

Before diving into the merits, the Court must address a preliminary point of contention. Stephens contends that because the Court granted

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and subsequent citations.

temporary reinstatement under a specific state statute, rather than a traditional injunction, the School Board's reliance on preliminary-injunction case law "presupposes that this Court issued an injunction [when] it did not." (Doc. 45 at 5.) Thus, Stephens says, the Court should ignore those cases entirely. (*Id.*)

The Court cannot agree. It is true that § 112.3187(9)(f) creates a unique statutory remedy. But Florida courts treat the appeal of a temporary reinstatement order exactly like the "appeal of a non-final order having the effect of injunctive relief." *Dep't of Child. & Fams. v. Herstein*, 399 So. 3d 384, 389 n.1 (Fla. Dist. Ct. App. 2025). What makes an order an injunction is a matter of substance, not semantics. We look at the order's practical effect rather than the label slapped on its cover. *See Abbott v. Perez*, 585 U.S. 579, 594 (2018) ("We have previously made clear that where an order has the practical effect of granting or denying an injunction, it should be treated as such[.]"). Because "[t]here is substantial overlap between [the factors governing issuance of a stay] and the factors governing preliminary injunctions[,]" the Court finds that the School Board did not err in citing such cases, which are relevant to the analysis. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008).

**A. The School Board's Arguments for a Stay**

**(1) Likelihood of Success on the Merits**

The School Board focuses on the first factor—likelihood of success on the merits—and understandably so. "The first two factors of the traditional standard are the most critical." *Nken*, 556 U.S. at 434. The Board correctly points out that this standard is somewhat flexible. A party need not prove it is a lock to win on appeal. A substantial case on the merits can suffice if the harm factors heavily tip the scales. *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005). "The necessary level or degree of possibility of success on the merits will vary according to the court's assessment of the other factors." *Id.*

The Board claims it easily clears this bar. Because the appeal turns on statutory interpretation, it notes the Eleventh Circuit will review the matter de novo. (Doc. 44 at 7-8.) From there, it re-ups two arguments from the underlying litigation: first, that Stephens failed to show his whistleblower disclosure was made in good faith; and second, that the decision not to renew Stephens's contract followed a "personnel action" whose underlying performance deficiencies were documented in writing by Stephens himself. (*Id.* at 9-16.)

Stephens replies that the Board is simply trying to relitigate a motion it already lost. He has a point. Under Florida's whistleblower statute, a plaintiff seeking temporary reinstatement must show that he made a protected disclosure before termination, that he was discharged, and that the disclosure was not made in bad faith or after an agency initiated a documented personnel action against him. *Herstein*, 399 So. 3d at 389. The Court previously found Stephens checked all those boxes.

Take the bad-faith argument. The Board insists the Court misread both its brief and Florida law. It complains that the Court focused on the nine days between the time Bernier threatened Stephens's job and the time he filed the complaint. The real issue, the Board says, is that Stephens sat on his hands for eight months while enduring Bernier's alleged abuse, only blowing the whistle when his job was on the line. (Doc. 44 at 11.) But the Court already answered this exact point. As the order explained, "Nothing about Stephens taking what he perceived as abusive conduct by Dr. Bernier for eight months allows a reasonable inference of bad faith or wrongful purpose." (Doc. 36 at 9.) The Board may fiercely disagree with that conclusion, but fierce disagreement is not the same as a substantial likelihood of success on appeal.

The Board fares no better on its statutory argument. Section 112.3187(9)(f) bars temporary reinstatement if the protected disclosure

happened "after an agency's initiation of a personnel action . . . which includes documentation of the employee's violation of a disciplinary standard or performance deficiency." *Id.* The Board claims that Stephens's own private, contemporaneous notes qualify as this statutory "documentation." But as the Court held, the plain text of the statute requires the entire process—including the documentation—to be an act of the agency. Rehashing the same statutory interpretation arguments does not transform a losing hand into a likely winner. Accordingly, the Court does not find that this factor favors the issuance of a stay in this case.

**(2) Risk of Irreparable Injury to the School Board and Balance of Hardships**

As for the balance of hardships, the School Board stresses that if this Court does not pause the reinstatement order its appeal might become moot. Beyond that, the Board emphasizes the practical headache of compliance. It points out that it has hired a replacement to fill Stephens' old job. And it argues that paying him a $209,520 salary to sit in a newly created role would drain resources from a school district already staring down a multi-million-dollar budget deficit, "depriv[ing] the District of its ability to allocate resources to a more important public purpose." (Doc. 44 at 18-19.) As the School Board sees it, Stephens, on the other hand, would benefit from an abeyance of his

requested relief in light of the fact that he has already relocated away from Lee County. (*Id.*)

Stephens responds that the School Board's financial obligations are not irreparable harm because "[p]aying an employee's salary is, by definition, curable in money." (Doc. 45 at 9.) Moreover, the Board has already taken steps to comply with the order granting temporary reinstatement (by creating a Chief of Staff position for Stephens pursuant to that order), eviscerating any argument that such compliance will result in irreparable harm. (*Id.* at 10.) Although Stephens has relocated, he asserts that the School Board has "explor[ed] the possibility of a remote working arrangement" and "[a] relocation that the District can accommodate is not grounds to deny the statutory protection the Legislature crafted." (*Id.* at 10-11.)

The Court agrees with Stephens. As Florida Courts have made clear, the express purpose of § 112(9)(f) is "to keep a whistle-blower on the job during the pendency of the lawsuit unless the statutory requirements for termination are met." *Marchetti v. Sch. Bd. of Broward Cnty.*, 117 So. 3d 811, 813 (Fla. Dist. Ct. App. 2013). Staying the Court's reinstatement order would eviscerate that statutory protection. Additionally, the Court finds that Stephens' $209,520.00 salary represents a negligible fraction of the alleged budget deficit. To the extent that the School Board has filled Stephens' COO role, it is reminded that

the statute (and the order at issue) expressly allows for reinstatement to an "equivalent position." Because of the foregoing and the fact that the Board has flexibility to comply, the Court finds that the balance of harms weighs against issuance of a stay.

**(3) Public Interest and Risk of Harm to Stephens**

The School Board also maintains that the public interest factor weighs in its favor. First, because it is a government entity, the Board argues its own interests and the public's interests are one and the same (Doc. 44 at 21); *see, e.g., Swain v. Junior*, 958 F.3d 1081, 1091 (11th Cir. 2020) ("[W]here the government is the party opposing the preliminary injunction, its interest and harm merge with the public interest."). Second, the Board points to its constitutional mandate to provide a quality education, warning that the "ultimate harm" of reinstating Stephens will fall squarely on the students.

But the School Board never really connects the dots. It offers no concrete explanation for how putting Stephens back to work will actually harm students, aside from the fiscal burden of paying his salary. And as Stephens rightly points out, the district's broader $27 million budget deficit is hardly the fault of his $209,520 paycheck.

More fundamentally, the School Board's argument ignores the policy choices already made by the elected representatives. Stephens contends—and

the Court agrees—that the public interest is best served by enforcing the Florida Public Sector Whistleblower Act as it was written. The Florida legislature specifically drafted this statute to apply to public employers like school districts, mandating temporary reinstatement to keep whistleblowers on the job while their claims are litigated. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977).

An outsider looking at the School Board's predicament might well sympathize with its logistical and financial headaches. If this Court were drafting Florida's whistleblower statute from scratch, it might have made a different policy choice. It might have given public employers more leeway to manage their budgets, or it might have required a stronger preliminary showing from the employee. But that is not how the statute reads, nor how it has been interpreted. And it is not this Court's job to save a party from the consequences of that legislative choice. *See United States v. Crape*, 603 F.3d 1237, 1244-45 (11th Cir. 2010) ("[W]e are not at liberty to rewrite the statute to reflect a meaning we deem more desirable."). The Florida legislature weighed the competing equities and made its call: public-sector whistleblowers

are entitled to temporary reinstatement. Accordingly, the School Board's Motion to Stay (Doc. 44) is **DENIED.**

**ORDERED** in Fort Myers, Florida on August 10, 2026.

Kyle C. Dudek
United States District Judge